IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

OCTAVIO GARCIA,                        )
                                       )
                 Plaintiff,            )
                                       )
vs.                                    )     Case No. 24-cv-2258-DWD
                                       )
WEXFORD HEALTH SOURCES, INC.,          )
NURSE PRACTITIONER DESAI,              )
CHRISTINE BROWN,                       )
                                       )
                 Defendant.            )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Octavio Garcia, an inmate of Illinois Department of Corrections (IDOC) brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, he alleged that the Defendants delayed his access to care for eye issues, ultimately resulting in blindness in his left eye. Defendants Wexford and Desai seek summary judgment on the issue of exhaustion in one Motion (Doc. 26), and Defendant Brown seeks summary judgment on exhaustion in a separate Motion (Doc. 28). Plaintiff responded (Doc. 30), and Defendants filed reply briefs (Docs. 31, 32). For reasons explained in this Order, the Motions are denied.

### BACKGROUND

Plaintiff alleged in the complaint that began to seek care on October 1, 2022, because he was experiencing blurry/clouded vision in his left eye. (Doc. 1 at ¶ 5). Plaintiff alleges this request, and a second request on October 16, 2022, were both

reviewed by Defendant Brown who was the Healthcare Unit Manager.  (*Id.* at ¶¶ 6-8).

Plaintiff alleges Brown knew he had symptoms of a detached retina, and both Brown and

Wexford knew that a detached retina required immediate attention.  (*Id.* at ¶¶ 9-10).

However, the Wexford written policies did not set forth a triage protocol for these specific

symptoms.  (*Id.* at ¶ 11).  Plaintiff alleges that due to Brown's own deliberate indifference,

and Wexford's lack of a policy, he was not promptly examined.  (*Id.* at ¶¶ 12-13).

Instead, Plaintiff was eventually evaluated on October 18, 2022, when he described

his symptoms to a correctional officer who, in turn, brought him to the medical unit.  (*Id.*

at ¶ 14).  Defendant Desai listened to Plaintiff's symptoms, including a loss of vision in

his left eye and the presence of floaters.  In response, Desai took Plaintiff's blood pressure

and put him on a waiting list to see the optometrist but took no other action.  (*Id.* at ¶¶

15-16).  Plaintiff alleges Desai's actions amounted to no treatment at all and are partially

attributable to Wexford's lack of a policy.  (*Id.* at ¶¶ 17-18).

On October 19, 2022, Plaintiff filed a grievance describing his symptoms and his

desire for care. Plaintiff alleges he was seen by an optometrist on November 17, 2022, but

surgery to repair his retina was unsuccessful and he is now blind in his left eye.  (*Id.* at

¶¶ 22-23).  Plaintiff seeks to proceed against Desai and Brown for deliberate indifference,

against Wexford for their policy or lack thereof, and against all defendants under state

law for medical malpractice.

The parties agree that the October 19, 2022, grievance is the sole grievance relevant

to exhaustion for this case.

**FINDINGS OF FACT**

In the October 19, 2022, grievance (number 2952-10-22), Plaintiff alleged:

On 10/1/2022 I submitted a request slip to be seen by a Doctor for having
blurry/cloudy vision in my left eye. The response I received was that I was
being placed on a back log list to see the eye doctor who is only available
on Mondays. I am having floaters in my eye and at times I cannot see at all
out of my left eye. I am not sure the cause of this issue, but it poses a severe
risk to health and sight going undiagnosed by not seeing me immediately
to evaluate this issue Pinckneyville CC is showing a deliberate indifference
to my medical needs and safety. This issue may be caused by high blood
pressure, diabetes, and other serious issues which could cause me to lose
my sight or have other dangerous side effects that could be irreparable.

(Doc. 27-1 3-4). As relief, Plaintiff sought "to immediately be seen doctor to diagnose,

evaluate, and treat the cause of my medical issue to prevent further risk of damage to my

health." (Doc. 27 at 3). The grievance was submitted as an emergency.

On October 19, 2024, the Warden deemed the grievance an emergency. (Doc. 27

at 3). However, the grievance officer did not respond until November 4, 2022, with a

simple statement, "Per HCUA: He is scheduled to see the optometrist next week." (Doc.

27 at 2). The grievance was then denied by the Warden on November 4, 2022. On

December 9, 2022, the Administrative Review Board denied the grievance as

"appropriately addressed by facility administration." (Doc. 27-2 at 1).

**CONCLUSIONS OF LAW**

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact

and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In

determining a summary judgment motion, the Court views the facts in the light most

favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex*

*Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *See*

*Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is

not to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial.") (internal quotation marks and citation omitted).

However, when the motion for summary judgment pertains to a prisoner's failure to

exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an

evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to

exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[1]  After hearing evidence,

finding facts, and determining credibility, the court must decide whether to allow the

claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004

(7th Cir. 2018).  The court is not required to conduct an evidentiary hearing if there is no

genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v.

Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL

951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring

a lawsuit about prison conditions unless and until he has exhausted all available

administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740.  "The exhaustion

requirement is an affirmative defense, which the defendants bear the burden of proving."

---

[1] The Supreme Court's recent opinion in *Perttu v. Richards*, 605 U.S. 460 (2025), held that if the facts necessary for a ruling on exhaustion are intertwined with the merits of the claim, a jury trial is required.  But the *Perttu* Court did not go so far as to extend the Seventh Amendment right to a jury trial to all exhaustion disputes.  In this case, there is no intertwinement of the facts, so *Perttu* does not require that this issue be determined at a jury trial.

*Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).  For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance.  20 ILL. ADMIN. CODE § 504.810(a).  Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c).  If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with

the IDOC Director through the Administrative Review Board (ARB).  20 ILL. ADMIN. CODE

§ 504.850(a).  The ARB must receive the appeal within 30 days of the date of the CAO's

decision.  *Id.*  The inmate must attach copies of the responses from the grievance officer

and CAO to his appeal.  *Id.*  The ARB submits a written report of its findings and

recommendations to the Director, who them makes a final determination.  20 ILL. ADMIN.

CODE § 504.850(d), (e).

B.  Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper

without a *Pavey* hearing.  The parties agree that grievance 2952-10-22 is the only grievance

relevant for exhaustion.  Defendants all argue that the grievance is not sufficient to

exhaust the claims against them because it does not name them, describe them, or

describe their individual conduct with particularity.  Defendants Desai and Wexford do

not cite any caselaw in the argument section of their brief to support the proposition that

the grievance is insufficient to exhaust against them.  Instead, they argue on the plain text

that the grievance says nothing explicit about the appointment with Desai or a Wexford

policy.  They argue that Plaintiff's complaints that "Pinckneyville C.C." is responsible for

his issues are far too generic.  Defendant Brown cites *Roberts v. Neal*, 745 F.3d 232, 235-36

(7th Cir. 2014) for the proposition that failing to name or describe an individual is

insufficient to exhaust a claim against that party.  Defendant Brown also argues that

because the complaint described a grievance filed about Desai's conduct, then the

grievance cannot possibly be meant to exhaust any claim against Brown.  (Doc. 28 at page

7, citing Doc. 1 at ¶ 19). In response, Plaintiff argues that he had no obligation to exhaust after he received the relief he wanted, his grievance was sufficient to exhaust the claims despite not naming the defendants individually, and the exhaustion process is unavailable for medical issues in IDOC because the ARB perpetually defers to medical discretion.

The Court will begin with relevant caselaw on the amount of detail required in a grievance for proper exhaustion, and then it will turn to the alternative arguments about Plaintiff not needing to exhaust after he got relief or the unavailability. In the *Roberts v. Neal* case, an inmate's grievance was found insufficient to exhaust a claim against a Pinckneyville prison intake nurse. 745 F.3d at 235-36. The grievance explicitly stated that it was challenging a documented issued by a Pinckneyville doctor named Obadina, but it then went on to say a Big Muddy River doctor had guaranteed certain treatment for a broken hand, and that when reviewing records, the intake nurse did not see anything. The *Roberts* Court surmised that the grievance might be complaining about the Pinckneyville doctor or the Big Muddy doctor, but that it could not be construed as taking issue with the Pinckneyville intake nurse because she was not a doctor and was not involved with the document. *Id.*

Unlike the grievance in *Roberts* that pointed to other specific and identifiable actors, Plaintiff's grievance in this case did not name any individual provider. The grievance described Plaintiff's effort from October 1, 2022-October 19, 2022, to secure care for vision problems that were deteriorating, and it faulted the prison at large for failing to ensure an appointment with a doctor. This could reasonably be understood by the

prison grievance personnel to mean that Plaintiff was complaining about anyone or anything that hindered his access to timely care.

In *Glick v. Walker,* 385 Fed. App'x 579, 582 (7th Cir. 2010), the Seventh Circuit adopted the Supreme Court's rationale from *Jones v. Bock,* 549 U.S. 199, 219 (2007)[2], that the primary purpose of the exhaustion requirement is to notify the prison of a problem and not to notify individual defendants. In *Glick* the inmate filed grievances about access to mental health care and exposure to secondhand smoke that impacted his existing cardiac conditions. The grievances did not name individual prison personnel but it clearly described two issues that the inmate desired to resolve. In his lawsuit, the inmate faulted a smattering of prison personnel such as the warden, grievance personnel, a healthcare administrator, and an internal affairs officer. The Court noted that when the inmate filed a grievance he articulated facts the prison could reasonably expect from a person in his position. They noted "[a]t the source of the decisions in question was a mystifying web of rules and procedures, and behind those an army of administrators; it would be unreasonable to expect that, for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision." *Glick*, 385 Fed. App'x at 582. The Court noted, it was possible that at the time the inmate filed the grievance, he did not even know who was responsible for the security classification that prevented his access to mental health

---

[2] "[N]othing in the [PLRA] imposes a 'name all defendants' requirement along the lines of the Sixth Circuit's judicially created rule." *Jones,* 549 U.S. at 217. "The Sixth Circuit rule may promote early notice to those who might later be sued, but that has not been thought to be one of the leading purposes of the exhaustion requirement." *Id.* at 219. "[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.*

groups, or for the placement with a heavy smoker.  Thus, the *Glick* Court emphasized

that "[g]rievances are intended to give prison administrators an opportunity to address

a shortcoming, not to put individual defendants on notice of a lawsuit."  *Id. citing Jones v.*

*Bock*, 549 U.S. at 218.

In *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011), the Seventh Circuit reiterated that

the failure to name individuals does not dictate a finding of failure to exhaust where the

prison system responded to the grievance at all levels on the merits, and did not reject it

for failing to identify who was at fault.  The *Maddox* Court considered a grievance about

the cancellation of religious services for one faith that did not name particular defendants.

The inmate ended up suing two wardens and the prison chaplain.  The *Maddox* Court

noted that despite not naming or describing the wardens or chaplain, the grievance

clearly notified administrators of the problem and thus served its purpose, particularly

because a warden and the chaplain were involved in responding to the grievance.

*Maddox*, 655 F.3d at 722.

Here, the Court finds that Plaintiff's situation is more akin to *Glick* and *Maddox*

than it is to *Roberts*.  Plaintiff's grievance clearly and unequivocally alerted prison

administrators that he was doing everything he could to seek care for problems with his

left eye, to no avail.  Any administrator reviewing the grievance would have easily

learned that he sent request slips and that he was seen on October 18 by Desai, but that

he had not received satisfactory care.  The prison administrators did not reject the

grievance for a procedural defect of failing to identify those involved in his requests for

care, and they instead responded on the merits that he was scheduled for a forthcoming

appointment, and that his medical needs were appropriately addressed by the prison. Plaintiff may not have known when he lodged the grievance that Healthcare Administrator Brown was someone who fielded requests for care like his October 1 and 16th requests, so generically saying the prison was not doing anything to ensure care, may have been the best he could manage. Though he could have been more specific about the fact that he saw Desai, it is also not unreasonable to assume that diligent grievance personnel investigating his request for urgent care for his eye would come across records about that encounter that happened the day before he filed the grievance. Thus, unlike *Roberts* where a grievance was clearly directed at one subset of providers and not another, Plaintiff's grievance was clearly meant to notify anyone who might be in a position to help. The grievance was sufficient to notify the prison of the issue he needed help with so that they had a chance to respond, even if it did not identify Brown and Desai by name or description.

Wexford attempts to dodge the *Monell* claim by arguing Plaintiff did not name them and did not mention a policy claim, but it should be quite familiar with the fact that courts generally have not required artfully pled *Monell* allegations at the grievance phase to interpret a claim as exhausted. Wexford argues that Plaintiff's generic attempt to fault Pinckneyville C.C. could not be interpreted as applying to it, but it is reasonable to think that as the contractor for medical services, it is included in a grievance that the prison is not providing adequate care. *See e.g., Morrow v. Wexford Health Sources, Inc., 2021 WL 3030329 at * 4 (S.D. Ill. July 19, 2021)* (collecting cases for the proposition that grieving activities for which Wexford was responsible or for which Wexford was involved in the

decision making process, or generally grievance health care treatment as a whole, is sufficient to exhaust a *Monell* claim against Wexford); *Daval v. Zahtz,* 2021 WL 2072127 at * 8 (N.D. Ill. May 24, 2021) (finding that an inmate did not need to name Wexford or clearly describe a policy, practice, or custom to exhaust a *Monell* claim); *Conley v. Birch,* 2012 WL 4202702 at * 5 (S.D. Ill. Sept. 19, 2012) (finding that an inmate did not need to name Wexford or describe policies or practices to exhaust a *Monell* claim); *Wojtaszek v. Litherland*, 2010 WL 7633990 at * 5 (S.D. Ill. Sept. 1, 2010) (noting that federal courts in Illinois have rejected Defendant Wexford's argument that an inmate must identify Wexford by name in a grievance prior to bringing a suit against it, and finding that a grievance about dental care was sufficient to exhaust a claim against Wexford).  This is especially so where Plaintiff's grievance was focused on a course of inadequate care or an ongoing problem, as opposed to an isolated interaction with a single provider.  *See Morrow*, 2021 WL 3030329 at *4-5 (comparing grievances about single instances with a provider to more generic grievances about a course of care and finding the former insufficient for *Monell* exhaustion and the latter sufficient).  Here, the Court finds that Plaintiff's general grievance about his inability to secure expedient care for his eye issues for nearly three weeks is sufficient to exhaust the *Monell* claim against Wexford.

Two other issues are worth brief mention.  First, in the Reply briefs, Defendants faulted Plaintiff for tendering additional material facts in his response that were not adequately supported or were not relevant to the narrow issue of exhaustion.  (Docs. 31, 32).  Local Rule 56.1(a) states that a material fact is one that bears directly on a legal issue raised in the motion, and one that is supported by citations to the record.  Defendants

take issue with a variety of statements of additional material fact, such as paragraph 3, which describes retinal detachment by citation to a Mayo Clinic webpage. (Doc. 30 at p. 5, ¶ 3; Doc. 31; Doc. 32). Defendants are correct that this fact is not relevant to the legal issue of exhaustion. Plaintiff also made statements of additional fact that relied purely on citation to bare factual assertions in his Complaint, but at summary judgment this generally is not enough support. The Court did not rely on facts that were not relevant or were not adequately supported, so these identified defects did not impact the outcome of the exhaustion analysis.

Second, Plaintiff urges the Court to find that Plaintiff's duty to use the grievance process ended when he got the relief he desired, and the grievance process was unavailable to Plaintiff because the ARB regularly defers to decisions of treating providers and thus medical issues are non-grievable. Plaintiff supported this proposition by citing to a response that he got to a separate 2023 grievance wherein the ARB indicated it was deferring to licensed medical professionals. (Doc. 30 at p. 9 ¶ 21). Given that the Court found proper exhaustion, it does not need to discuss these arguments at length, but it is worth pointing out that the ARB ruling for grievance 2952-10-22 merely stated "denied, this office finds that the issue was appropriately addressed by the facility Administration," and it did not contain any additional caveat about the ARB being unable or unwilling to substantively review this instance of medical care. (Doc. 27-1 at 1). Thus, the argument about availability on the facts of this specific grievance in this case is misplaced. Additionally, any argument that the ARB always defers to treating professionals seems more like an argument for futility than unavailability. Inmates are

still required to exhaust a claim even if they view the process as futile.  *See e.g.*, *Dole v. Chandler*, 438 F.3d 804, 890 (7th Cir. 2006).

**DISPOSITION**

The Defendants' Motions for Summary Judgment (Docs. 26, 28) are **DENIED**.  This case shall proceed to merits discovery on all claims against all defendants.

**IT IS SO ORDERED.**

Dated: October 30, 2025

/s/ *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge